**E-FILED on**   3/8/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BALJINDER SINGH; RAJINDER KAUR,<br><br>       Plaintiffs,<br><br>    v.<br><br>7-ELEVEN, INC.; CINDY DUONG; LARRY DUONG,<br><br>       Defendants. | No. C-05-04534 RMW<br><br>ORDER GRANTING 7-ELEVEN'S MOTION FOR SUMMARY JUDGMENT<br><br>**[Re Docket No. 21]** |

    Plaintiffs Baljinder Singh and Rajinder Kaur seek to recover unpaid overtime and meal break compensation under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the California Labor Code §§ 204, 510, and 1194.  Defendant 7-Eleven, Inc. ("7-Eleven") moves for summary judgment on all of plaintiffs' claims.  For the reasons set forth below, the court grants the motion.

## I. BACKGROUND

    7-Eleven, Inc. owns, operates, and franchises retail food stores under the trademarked name "7-Eleven."  Decl. Christine Carr Supp. Mot. Summ. J. ("Carr Decl.") ¶ 2. During the relevant time period of 1999 to 2005, Cindy Duong ("Duong") was the franchise owner of Store No. 17208, located at 3961 Snell Avenue, San Jose, California ("the Store").  Decl. Eric Welter Supp. Mot.

Summ. J. ("Welter Decl."), Ex 1, Cindy Duong Dep. ("Duong Dep.") at 10:13-19. The relationship between 7-Eleven and Duong was governed by a written franchise agreement. Welter Decl., Ex. 4, 7-Eleven, Inc. Individual Store Franchise Agreement ("Franchise Agreement"). According to the Franchise Agreement, Duong and 7-Eleven share the profits from the store. Duong Dep. at 22:12-14. Each month, 7-Eleven provides Duong a financial statement, which shows gross sales less costs of merchandise. *Id.* at 18:1-7. 7-Eleven pays the lease, the water, and the electricity, after which the difference is split between 7-Eleven and Duong. *Id.* at 23:2-15. Then the monthly expenses such as payroll, payroll tax, EDD insurance, trash, telephone, maintenance, and miscellaneous expenses are deducted from Duong's share of the gross profit. *Id.* at 23:8-17, 46:15-25. The remaining net profit is then applied to Duong's equity account with 7-Eleven, from which Duong may withdraw funds at her discretion. *Id.* at 29:6-10, 49:7-25.

The relationship further involved weekly visits by a 7-Eleven field consultant, who was the only employee of 7-Eleven that came to the Store on a regular basis. Duong Dep. at 54:19-55:8. Jennifer Anistik ("Anistik") was the field consultant assigned to the Store, and she provided Duong with merchandising ideas and recommendations, evaluation of the condition of the Store, and other advice on increasing sales and profits. Duong Dep. at 51:6-54:18.

Plaintiffs Singh and Kaur were employees at the Store. *Id.* at 13:1-3. Kaur was interviewed and hired by Duong in 1999. Welter Decl., Ex 3, Rajinder Kaur Dep. ("Kaur Dep.") at 10:18-11:13. After she was hired, Kaur provided Duong a copy of her California identification, social security card, and work permit. *Id.* at 27:7-16. Duong determined Kaur's starting rate of pay as $7.50 per hour, and after several 25-cent-per-hour raises, Kaur's pay rate reached $9 per hour. *Id.* at 14:22-15:23. In March 2005, Kaur quit working at the Store after giving a resignation notice to Duong. *Id.* at 12:11-23. Singh was interviewed and hired by Duong in March 2002. Welter Decl., Ex 2, Baljinder Singh Dep. ("Singh Dep.") at 10:14-22. Singh did not meet with anyone else regarding the job. *Id.* at 11:24-25. Duong determined Singh's starting rate of pay as $8.50 per hour and subsequently gave Singh two raises, each of 25 cents per hour. *Id.* at 13:1-5. Duong also maintained a copy of Singh's driver's license, social security card, and work permit in the Store. *Id.*

at 36:1-10. Prior to resigning his employment, Singh notified Duong of his intention to do so. *Id.* at 33:3-10.

During plaintiffs' employment, Duong instructed them on their specific job duties. Duong Dep. at 117:3-10. Duong informed plaintiffs that their duties included unloading the deliveries, stocking the cooler, and cleaning. Singh Dep. at 18:6-25; Kaur Dep. at 13:2-5, 16:12-22. Plaintiffs also filled out daily paperwork and counted their cash drawer for Duong's review. Singh Dep. 36:17-37:25. In addition, Duong scheduled plaintiffs' work shifts. Duong Dep. at 117:24-118:8. Duong initially scheduled Singh to work the night shift and, at Singh's request, rescheduled him to work the "swing shift," from 12 noon to 11 p.m. Singh Dep. at 13:16-25, 51:9-25. Duong called Singh if she needed extra work hours from Singh. *Id.* at 60:9-25. Duong also requested Singh to fill in when an employee did not show up for a scheduled shift. *Id.* at 29:14-21. Kaur was scheduled by Duong to work from 6 a.m. to 6 p.m., and Duong similarly requested Kaur to fill in for absent employees. Kaur Dep. at 16:10-11, 13:9-25, 28:17-24.

For each pay period, Duong sent information about the plaintiffs' hours worked and rate of pay to 7-Eleven accounting in Dallas, Texas. Duong Dep. at 118:9-25, 25:4-24. The following Thursday, 7-Eleven deducted the payroll expense from Duong's equity account and sent payroll checks via courier to Duong. *Id.* at 26:9-14, 28:15-29:10. The checks were subsequently distributed to plaintiffs. *Id.* at 32:12-15. When plaintiffs noticed missing hours worked from their paycheck, they would ask Duong to correct the problem. Singh Dep. at 62:2-23. Duong would then adjust the amount of the following paycheck to reflect the additional hours. *Id.* at 62:8-63:22.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* The moving party bears the initial burden of establishing that there is no genuine issue of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In response to a properly supported motion, the responding party must present specific facts showing that contradiction is possible. *British Airways Board. v. Boeing Co.*, 585 F.2d 946, 950-52 (9th Cir. 1978). In a motion for summary judgment, the court draws all reasonable inferences that may be taken from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B.     Definition of "Employer" Under the FLSA**

7-Eleven argues that plaintiffs' Second and Fourth Causes of Action under the FLSA fail as a matter of law because 7-Eleven was not plaintiffs' employer. Since the relevant sections of the FLSA apply to employers in labor matters, a finding that 7-Eleven was not plaintiffs' employer would necessarily be fatal to plaintiffs' FLSA claims.

The FLSA defines an "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency[.]" 29 U.S.C. § 203(d). Plaintiffs argue that the joint employment standard of 29 C.F.R. § 791.2(b)[1], under the FLSA, applies in this case, citing *Chao v. A-One Medical Services, Inc.*, 346 F.3d 908 (9th Cir. 2003). In *Chao,* the Ninth Circuit held that the two home health care companies were a single enterprise under common control because there was a substantial merging of operations. *Id.* at 912-13. This "horizontal" joint employment involved sharing of employees, supervisors, administrative services, and a scheduler. *Id.* The franchise relationship in the present case, on the other hand, is more closely analogous to a "vertical" relationship "in which a company has contracted for workers who are directly employed by an intermediary company." *Id.* at 917. In such vertical relationships, the "economic reality test" applies in determining joint employment status. *Id.*

---

[1] Plaintiffs rely on section 791.2(b)(3), which provides that:
> Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the work week, a joint employment relationship generally will be considered to exist in situations such as: . . .
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b)

ORDER GRANTING 7-ELEVEN'S MOTION FOR SUMMARY JUDGMENT—No. C-05-04534 RMW
JEK                                    4

The Ninth Circuit has specified that whether an entity is an employer under the FLSA is a question of law that must be determined by applying the economic reality test. *Torres-Lopez v. May*, 111 F.3d 633, 638, 639 (9th Cir. 1997) (citing *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1469, 1470 (9th Cir. 1983); *Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 754 (9th Cir. 1979)). Under the economic reality test, a court must "consider the totality of the circumstances of the relationship, including whether the alleged employer has the power to hire and fire the employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records." *Hale v. State of Arizona*, 993 F.3d 1387, 1394 (9th Cir. 1993) (citing *Bonnette*, 704 F.2d at 1470).

### 1.     The Power to Hire and Fire Employees

The first factor of the economic reality test examines the alleged employer's power to hire and fire employees. *Id.* The relevant language of 7-Eleven's "Individual Store Franchise Agreement" reads:

> You and we agree that this Agreement creates an arm's-length business relationship and does not create any fiduciary, special or other similar relationship. You agree: (a) to hold yourself out to the public as an independent contract; (b) to control the manner and means of the operation of the Store; and (c) to exercise complete control over and responsibility for all labor relations and the conduct of your agents and employees, including the day-to-day operations of the Store and all Store employees. You and your agents and employees may not: (i) be considered or held out to be our agents or employees or (ii) negotiate or enter any agreement or incur any liability in our name, on our behalf, or purporting to bind us or any of our or your successors-in-interest. Without in any way limiting the preceding statements, we do not exercise any discretion or control over your employment policies or employment decision. All employees of the Store are solely your employees and you will control the manner and means of the operations of the Store. No actions you, your agents or employees take will be attributable to us or be considered to be actions obligating us.

Franchise Agreement at ¶ 2. Based upon the language of the Franchise Agreement, it appears clear that Duong possessed exclusive right and responsibility to control the hiring and firing decision. Contractual language, however, does not establish the nature of the employment relationship as a matter of law. Real, 603 F.2d at 755. In further support, Duong, Singh, and Kaur have all affirmatively testified that Duong had sole control over hiring and firing at the Store. Duong Dep. at 24:25-25:1, 117:11-22; Singh Dep. at 11:12-12:5, 33:3-10, 40:8-23; Kaur Dep. at 11:10-13, 30:9-31:4. Plaintiffs nevertheless assert that Duong did not have sole control in hiring because

employees were subject to the terms and conditions of the training, on-going training, and satisfaction of 7-Eleven service standards. However, no evidence indicates that 7-Eleven exercised any control over any terms of the employment, including training of employees, or influenced Duong's choice of employees or manner of hiring. In fact, plaintiffs' deposition testimony corroborate that Duong hired Singh and Kaur, without any input from 7-Eleven, and when Singh and Kaur resigned from their employment, they notified Duong and no one else.

Plaintiffs argue that because Duong was required to satisfy 7-Eleven service standards, if Duong disagreed with 7-Eleven's standards, the franchise agreement could be terminated by 7-Eleven. According to plaintiffs, this condition rendered Duong's ability to control the terms of the employees illusory. "Such conditions, however, neither create nor preserve an employee status. The most that can be said is that they establish a month-to-month tenancy[, which is] not ordinarily associated with master-servant relationships." *The Southland Corporation, d/b/a Speedee 7-Eleven*, 170 N.L.R.B. 1332, 1333 (1968) (citing *Clark Oil & Refining Corp.*, 129 N.L.R.B. 750, 756 (1960)). Indeed, the power to terminate a franchisee alone is not sufficient to create a joint employment relationship. *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090 (10th Cir. 1991); *Alberter v. McDonald's Corp.*, 70 F. Supp. 2d 1138, 1145 (D. Nev. 1999).

### 2. Supervision and Control of Employee Work Schedules or Conditions of Employment

The second factor of the economic reality test examines the alleged employer's power to supervise and control employee work schedules or conditions of employment. *Hale*, 993 F.3d at 1394. The parties dispute whether Duong was solely responsible for controlling plaintiffs' work schedules. Nevertheless, plaintiffs and Duong's deposition testimony support the conclusion that Duong exclusively arranged plaintiffs' workshifts according to the operational demand of the Store. Duong Dep. at 117:24-118:8, 119:14-18; Singh Dep. at 13:16-25, 15:1-13, 29:18-21, 51:17-25, 60:7-25; Kaur Dep. at 16:10-11, 28:17-24. Plaintiffs have presented no evidence to suggest a factual issue as to Duong's sole control of the work schedules.

Plaintiffs further contend that Duong was not the only person who instructed plaintiffs on their job duties. Plaintiffs allege that the Store was under common control and that essential areas relating to the terms and conditions of employment were regulated by 7-Eleven. Specifically,

plaintiffs argue that 7-Eleven set the store hours to be 24 hours a day, had total control over the delivery of service by plaintiffs, and had control over the food service and the uniforms to be worn. The enforcement of these terms and conditions, however, are limited.  Under the Store Franchise Agreement, 7-Eleven may terminate the franchise agreement on three days notice with the opportunity to cure the violation in most cases.  Franchise Agreement at ¶ 26(a)(2)(f).  The remedies available do not permit 7-Eleven to interfere with day-to-day operations of the Store.  Moreover, simply setting the standards without actual control of day-to-day operations is not sufficient to establish an employer-employee relationship between 7-Eleven and plaintiffs.  *See e.g., Alberter*, 70 F. Supp. 2d at 1145; *Thomas v. Freeway Foods, Inc.*, 406 F. Supp. 2d 610, 617 (M.D.N.C. 2005). Such policies are merely reflective of an inherent interrelation of operations between the two entities and 7-Eleven's goal of attaining conformity to certain operational standards and details.  *Scales v. Sonic Industries, Inc.*, 887 F. Supp. 1435, 1439 (E.D. Okla. 1995) (citing *Evans*, 936 F.2d at 1091 ("Outside of the necessary control over conformity to standard operational details inherent in many franchise settings, McDonald's only real control over [the franchisee] was its power to terminate the franchises.")).

     Plaintiffs set forth in declarations in support of their opposition brief, that Anistik, 7-Eleven's field consultant, would inspect plaintiffs' uniforms and equipment and instruct plaintiffs to check customers' identification when selling alcoholic beverages and cigarettes.  Decl. Baljinder Singh Supp. Opp'n Mot. Summ. J. ("Singh Decl.") ¶ 6; Decl. Rajinder Kaur Pls.' Opp'n ("Kaur Decl.") ¶ 7. The court is not persuaded that plaintiffs' declarations create a factual issue as to whether Anistik gave any instructions directly to plaintiffs.  To the extent that plaintiffs' declarations suggest she did, the declarations contradict their prior deposition testimony in which they state that they had no communication with Anistik.  Singh Dep. at 32:20-22, 39:3-5; Kaur Dep. at 13:6-8, 33.[2]  In considering a motion for summary judgment, a trial court may not evaluate the credibility of a witness or weigh the evidence.  *California Steel and Tube v. Kaiser Steel Corp.*, 650 F.2d 1001, 1003 (9th Cir. 1981) (citing *Neely v. St. Paul Fire & Marine Insurance Co.*, 584 F.2d 341, 344 (9th

---

[2] 7-Eleven apparently inadvertently did not provide page 33 from the Kaur deposition, but quoted it in its reply papers.  Def.'s Reply at 2:15-28.

Cir. 1978)). The focus of the evaluation is to determine if a material factual dispute exists. *Id.* Nevertheless, an issue of fact may not be "genuine" for purposes of summary judgment, where a witness changes his story to create an issue of fact. *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 543-44 (9th Cir. 1975). As in *Radobenko*, plaintiffs' declaration supporting their opposition brief contradicts their prior deposition testimony resulting in a factual dispute. Plaintiffs' contradictory affidavits do not explain the inconsistency with the earlier deposition testimony. *Kennedy v. Allied Mutual Insurance Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991). More importantly, even if Anistik checked uniforms and equipment and told plaintiffs to check identification when selling alcohol or cigarettes, such actions do not raise a material issue of fact regarding 7-Eleven's control of the workplace or conditions of employment.

### 3.  Determination of the Rate and Method of Payment and Maintenance of Employment Records

The third and fourth factors of the economic reality test examines the alleged employer's ability to determine the rate and method of payment and maintain employment records. *Hale*, 993 F.3d at 1394. Plaintiffs contend that 7-Eleven had control over all payroll functions, including keeping and generating time records; withholding and paying federal and state taxes, worker's compensation premiums, and EDD taxes; calculating, generating, and delivering the employees' paychecks; filing quarterly returns; and providing employees with annual W2's. These ministerial functions are insufficient to support plaintiffs argument that 7-Eleven controls labor relations. Providing a "payroll service to a franchisee's employees does not in any manner create an indicia of control over labor relations sufficient to demonstrate that the franchisor is a joint employer." *Hatcher v. Augustus*, 956 F. Supp. 387, 392 (E.D.N.Y. 1997); *Scales*, 887 F. Supp. at 1439. The court finds that 7-Eleven was not responsible for setting plaintiffs' wages, using its funds to pay plaintiffs, or providing any employment benefits. The record indicates that 7-Eleven has not utilized its own funds to pay any portion of the compensation to plaintiffs. All payroll funds and taxes were directly debited from Duong's equity account. Duong Dep. at 22:21-24:22. Although 7-Eleven generates paychecks, this is merely a convenience for the franchisees such as Duong, who provided all relevant wage and tax information. *Speedee 7-Eleven*, 170 N.L.R.B. at 1333.

### 4.  Conclusion

ORDER GRANTING 7-ELEVEN'S MOTION FOR SUMMARY JUDGMENT—No. C-05-04534 RMW
JEK                                                                8

Considering all factors and considering the relationship between the plaintiffs and 7-Eleven as a whole, for the reasons set forth above the court finds that 7-Eleven was not plaintiffs' employer under the economic reality test. Accordingly, plaintiffs' Second and Fourth Causes of Action under the FLSA fail as a matter of law.

### C. California Labor Code Claims

Plaintiffs' First, Third, and Fifth Causes of Action involve identical claims to plaintiffs' Second and Fourth Causes of Action, except that they are asserted under California labor law. The dispositive issue, as with plaintiffs' federal claims, is whether 7-Eleven was plaintiffs' employer. Unlike the FLSA, however, the California Labor Code does not specifically define the term "employer." Moreover, although 7-Eleven urges this court to adopt the economic reality test[3] under the FLSA in considering the state claims, the California Supreme Court has suggested that the federal definition under the FLSA is inapplicable to the California Labor Code. *Reynolds v. Bement*, 36 Cal. 4th 1075, 1087 (2005). The *Reynolds* court acknowledged that

> while it is true that [f]ederal decisions have frequently guided our interpretations of state labor provisions the language of which parallels that of federal statutes, where the language or intent of state and federal labor laws substantially differ[s], reliance on federal regulations or interpretations to construe state regulations is misplaced. While the FLSA contains an express definition of "employer," section 1194 does not.

*Id.* (citations and quotation marks omitted) (discussing Cal. Labor Code § 1194). As with section 1194, none of the California Labor Code provisions pled in the complaint defines "employer." Thus, as *Reynolds* explained, the FLSA and other federal authorities 7-Eleven cited do not apply to plaintiffs' claims under California labor law. *Jones v. Gregory*, 137 Cal. App. 4th 798, 804 (2006).

California courts have consistently recognized that the principle test for determining employment relationships is the right of control over the manner or means of accomplishing the result desired. *Isenberg v. California Employment Stabilization Comm'n*, 30 Cal. 2d 34, 39 (1947); *Wickham v. Southland Corp.*, 168 Cal. App. 3d 49, 54 (1985). "If control may be exercised only as to the result of the work and not the means by which it is accomplished, an independent contractor

---

[3] 7-Eleven cites a federal case that applied the FLSA definition by reasoning that the "California courts would likely to focus on the economic realities' of the relationship, rather than on mere contractual or technical distinctions." *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1469 (C.D. Cal. 1969).

ORDER GRANTING 7-ELEVEN'S MOTION FOR SUMMARY JUDGMENT—No. C-05-04534 RMW
JEK                                                                 9

relationship is established." *Tieberg v. Unemployment Insurance Appeals Bd.*, 2 Cal. 3d 943, 946-47 (1970) (citing *Moody v. Industrial Accident Comm'n*, 204 Cal. 668, 670 (1928)).  Strong evidence of the right to control is shown by the right to discharge the worker.  *Isenberg*, 30 Cal. 2d at 39.

As set forth above, the court has determined that the undisputed facts establish that Duong exclusively possessed the right to discharge employees, including Singh and Kaur.  Plaintiffs argue, however, that Duong's right to run the operation is illusory and that, in reality, the franchise agreement allows 7-Eleven to control the essential areas relating to the terms and conditions of employment.  The facts do not support the argument.  "A franchisor must be permitted to retain such control as is necessary to protect and maintain its trademark, trade name and good will, without the risk of creating an agency relationship with its franchisees."  *Cislaw v. Southland Corp.*, 4 Cal. App. 4th 1284, 1295 (1992).  Furthermore, California courts have consistently held that a principal-agency relationship exists only when the franchisor retains complete or substantial control over the daily activities of the franchisee's business.  *Id.* at 1296; *Kaplan v. Coldwell Banker Residential Affiliates, Inc.*, 59 Cal.App.4th 741, 746 (1997).  The court finds no evidence to indicate that 7-Eleven controlled the daily activities of the Store.

Therefore, as the court finds that 7-Eleven was not plaintiffs' employer under the right to control test, plaintiffs' First, Third, and Fifth Causes of Action under the California Labor Code fail as a matter of law.

### III.  ORDER

For the foregoing reasons, the court grants defendant 7-Eleven's motion for summary judgment on all of plaintiffs' claims.

DATED:  3/7/07

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Robert David Baker                    attyatlaw@earthlink.net

**Counsel for Defendants:**

Lee Ellen Potter                      hoddy.potter@bingham.com
Karen Rosenthal                       rosenthalk@gtlaw.com
James Severson                        james.severson@bingham.com
Eric A. Welter                        eaw@welterlaw.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**      3/8/07                              /s/ MAG
                                          **Chambers of Judge Whyte**